**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT TIMOTHY BOLLA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | CASE NO. CV 17-1640 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Robert Timothy Bolla ("Plaintiff") seeks review of the final decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying his application for social security benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 6, 8, 13). For the reasons stated below, the decision of the Commissioner is REVERSED and this case

is REMANDED for further administrative proceedings consistent with this decision.

## II.

## **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

| | |
|---|---|
| (3) | Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four. |
| (4) | Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five. |
| (5) | Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. |

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-

3

Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## III.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process in evaluating Plaintiff's case. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 23, 2012, the alleged onset date. (AR 31). At step two, the ALJ found that Plaintiff's diabetes mellitus, type II; a history of kidney stones, partially resolved; degenerative joint disease of the left shoulder; and obesity are severe impairments. (AR 31). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 34).

The ALJ then assessed Plaintiff's RFC and concluded that he can perform medium work, as defined in 20 C.F.R. § 404.1567(c),[1] except:

> [Plaintiff] is limited to occasional climbing of ladders, ropes, and scaffolds and occasional reaching overhead bilaterally. [Plaintiff] is able to engage in frequent climbing of stairs or ramps and frequent stooping, kneeling, crouching, and crawling. [Plaintiff] must avoid concentrated exposure to vibration, unprotected heights, and operation of hazardous moving machinery.

(AR 34). At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a winery worker. (AR 38). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act since October 23, 2012, the alleged onset date. (AR 39).

## IV.
### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must " 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.' " Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

**A. The ALJ Failed To Properly Weigh The Treating Physicians' Opinions**

An ALJ must afford the greatest weight to the opinion of the claimant's treating physician. The opinions of treating physicians

6

are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. Id. at 830-31; see Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008). "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record," the ALJ shall consider "specified factors in determining the weight it will be given[, including] . . . the length of the treatment relationship and the frequency of examination by the treating physician[ ] and the nature and extent of the treatment relationship between the patient and the treating physician." Orn, 495 F.3d at 631 (citation omitted); see 20 C.F.R. §§ 404.1527(d)(2) (listing factors to consider), 416.927(d)(2) (same).

1. **Dr. Bernard**

On January 23, 2014, Jeanne Dustin Bernard, M.D., Plaintiff's endocrinologist, opined that because of Plaintiff's uncontrolled

type 2 diabetes, he could occasionally lift ten pounds, frequently lift less than ten pounds, stand/walk less than two hours in an eight-hour day, and sit continuously for less than six hours in an eight-hour day. (AR 388). Because of arthritis in his hands and a frozen left shoulder, Plaintiff is moderately limited in the use of his upper extremities. (AR 388). On February 17, 2015, Dr. Bernard noted that Plaintiff's diabetes had progressed from type 2 (non-insulin dependent) to type 1 (insulin dependent). (AR 390). She opined that due to Plaintiff's chronic fatigue, physical and mental stress and high blood sugar readings, he is unable to work. (AR 390). Dr. Bernard concluded that Plaintiff's "chronic conditions will never change." (AR 390). The ALJ gave Dr. Bernard's opinions "little probative weight," finding that they are inconsistent with treatment notes and minimal conservative care. (AR 37-38). The ALJ also rejected the opinions because the forms were "brief and did not include any narrative discussion of physical findings to support the assessed limitations." (AR 37-38). The ALJ's analysis is not supported by substantial evidence.

First, Dr. Bernard's opinions were not mere check-the-box forms. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.") (citation and alterations omitted). Here, however, Dr. Bernard's opinions explained that Plaintiff's limitations were due to his

uncontrolled diabetes and complications related to his diabetes, including osteoarthritis in both hands, a frozen left shoulder, chronic fatigue and physical and mental stress, and high blood sugar readings. (AR 388, 390).

Second, the ALJ's decision overlooks important evidence in the medical records. The ALJ contends that Dr. Bernard's opinions are inconsistent with the treatment notes because in October 2013 and February 2015, Plaintiff was intact neurologically. (AR 37-38). To the contrary, on October 2, 2013, Plaintiff complained of chronic fatigue, arthritis in his hands and severe back pain. (AR 332). On examination, Plaintiff was hyperglycemic and tested positive for diabetic neuropathy. (AR 332). On February 17, 2015, Plaintiff complained of fatigue and arthritis in his hips. (AR 397). On examination, Plaintiff was hyperglycemic with abnormal neurological findings. (AR 397). A monofilament test and vibratory hammer test, which are used to check for peripheral neuropathy, were each positive bilaterally. (AR 397).

Further, Dr. Bernard's opinions were consistent with the treatment notes and laboratory tests that she performed. Dr. Bernard treated Plaintiff on a continuing basis beginning in February 2013. (AR 332-75, 388, 390-427). At Dr. Bernard's initial intake examination, she diagnosed type 2 diabetes mellitus, uncontrolled with fluctuating blood sugars, arthritis, chronic fatigue and frozen shoulder, along with muscular cramping and numbness in both arms. (AR 343-45). Dr. Bernard concluded that Plaintiff was experiencing hypoglycemic events due to problems with

9

insulin overcorrection. (AR 343). Dr. Bernard consistently found that Plaintiff's diabetes was uncontrolled and noted large fluctuations in his blood-sugar levels, with related hypoglycemic events and difficulties determining the proper insulin dosage. (AR 332-75, 390-427). Dr. Bernard also found "additional diabetic features," including positive monofilament and vibratory hammer testing of Plaintiff's lower extremities. These tests are used to test for diabetic neuropathy. (AR 332, 337, 340, 343, 397, 402, 406, 418). In January 2014, Dr. Bernard concluded that Plaintiff's diabetes had progressed from type 2 to type 1. (AR 420). Subsequently, Plaintiff's type 1 diabetes remained uncontrolled despite Plaintiff's strict adherence to his treatment regimen. (AR 399, 403, 408, 413, 452). The ALJ cannot selectively rely on some entries in the medical records while ignoring many others that indicate continued, severe impairments. Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014); Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001).

Finally, the ALJ does not explain how Plaintiff's "minimal conservative care" (AR 37) is inconsistent with Dr. Bernard's opinions regarding Plaintiff's limitations from diabetes. Dr. Bernard concluded that "[Plaintiff's] condition is a hereditary disease that runs in his family, meaning his chronic conditions will never change." (AR 390). There is no cure for diabetes and treatment for those with type 1 diabetes is limited to insulin injections or the use of an insulin pump. See Mayo Clinic, Diabetes, available at www.mayoclinic.org (last visited Dec. 18, 2017) (hereinafter "Mayo Clinic, Diabetes"). The ALJ does not

identify any additional or more aggressive care that is available for someone with type 1 diabetes. See Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Hugh Perkin, M.D., Plaintiff's urologist, noted in February 2015, that Plaintiff "has incredibly high insulin requirements for his diabetes and requires close monitoring and care."[2] (AR 431). Despite Plaintiff strict adherence to his treatment regimen, his diabetes remains uncontrolled, which "can have many adverse and severe health affects [sic]." (AR 431). Dr. Perkin concluded that Plaintiff's health issues are not due to medication noncompliance but are instead "a genetic and metabolic predisposition." (AR 431). Again, the record clearly demonstrates the severity of Plaintiff's diabetic condition.

In sum, the ALJ did not provide specific and legitimate reasons for rejecting Dr. Bernard's opinions. On remand, the ALJ shall reevaluate the weight to be afforded Dr. Bernard's opinions. If the ALJ finds appropriate reasons for not giving the opinions controlling weight, the ALJ may not reject the opinions without providing specific and legitimate reasons supported by substantial evidence in the record.

---

[2] The ALJ gave Dr. Perkin's conclusions "significant probative weight." (AR 36).

### 2. Dr. Sigmund

On July 22, 2013, Stephen Sigmund, M.D., Plaintiff's primary care physician, opined that because of Plaintiff's uncontrolled type 2 diabetes and associated severe pain and fatigue, he is unable to work for at least twelve months. (AR 457). On February 3, 2014, Dr. Sigmund opined that due to Plaintiff's type 1 diabetes and associated complications, he could occasionally lift ten pounds, frequently lift less than ten pounds, stand/walk less than two hours in an eight-hour day, and sit continuously for less than six hours in an eight-hour day. (AR 389). Dr. Sigmund also opined that because of Plaintiff's osteoarthritis in both hands and a frozen left shoulder, he has moderate limitations in his upper extremities, bilaterally. (AR 389). The ALJ gave Dr. Sigmund's opinions "little probative weight," finding that they were inconsistent with mild physical evidence, treatment notes and minimal conservative care. (AR 37). The ALJ also rejected the opinions because the forms were "brief and did not include any narrative discussion of physical findings to support the assessed limitations." (AR 37). The ALJ's analysis is not supported by substantial evidence.

First, Dr. Sigmund's opinions were not mere check-the-box forms. Dr. Sigmund explained that Plaintiff's limitations were due to his uncontrolled diabetes and complications related to his diabetes, including osteoarthritis in both hands, a frozen left shoulder, and chronic fatigue and pain. (AR 389, 457).

Second, the ALJ's decision again overlooks important medical evidence when it considers Dr. Sigmund's opinions. The ALJ cites three medical records in concluding that Dr. Sigmund's opinions are contrary to "minor physical findings." (AR 37). These records, however, identify chronic, largely uncontrolled impairments. (AR 444, 452, 460). On January 29, 2014, Dr. Sigmund concluded that Plaintiff's diabetes is uncontrolled, requiring multiple and various treatments that have been difficult for Plaintiff to tolerate and with poor efficacy. (AR 452). On October 15, 2014, Plaintiff complained of arthritis and chronic fatigue. (AR 444). While Dr. Sigmund found that Plaintiff's fatigue was controlled, he concluded that Plaintiff's uncontrolled diabetes and chronic osteoarthritis were under only fair control. (AR 444). On June 30, 2015, Dr. Sigmund assessed active, uncontrolled diabetes with kidney complications. (AR 460).

Further, Dr. Sigmund's opinions were consistent with the treatment notes and laboratory tests that he performed or reviewed. Dr. Sigmund treated Plaintiff on a regular basis beginning in October 2012. (AR 314-31, 434-65). On December 13, 2012, Dr. Sigmund diagnosed chronic renal insufficiency, type 2 diabetes and fatigue. (AR 316). In February 2013, Dr. Sigmund concluded that Plaintiff's diabetes was uncontrolled. (AR 323). In July 2013, Dr. Sigmund opined that Plaintiff has chronic left shoulder pain, fatigue, uncontrolled type 2 diabetes, back pain and osteoarthritis in both hands. (AR 327-28). On examination, Dr. Sigmund found that Plaintiff's left frozen shoulder causes difficulty of motion passive and active in any direction greater than twenty degrees

and that Plaintiff's osteoarthritis causes difficulties with activities of daily living. (AR 328). In January 2014, Dr. Sigmund reviewed Dr. Bernard's treatment records and concluded that Plaintiff's diabetes and fatigue are uncontrolled. (AR 452). In April and June 2015, Dr. Sigmund reiterated that Plaintiff has uncontrolled diabetes with kidney complications, chronic kidney disease, chronic fatigue and malaise, and osteoarthritis. (AR 434-37, 460-64).

Finally, as discussed above, the ALJ does not explain how Plaintiff's "minimal conservative care" (AR 37) is inconsistent with Dr. Sigmund's opinions or what other care Plaintiff should have received. There is no cure for diabetes and treatment for those with type 1 diabetes is limited to insulin injections or the use of an insulin pump. The ALJ does not identify any additional or more aggressive care that is appropriate for someone with type 1 diabetes.

In sum, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Sigmund's opinions. On remand, the ALJ shall reevaluate the weight to be afforded Dr. Sigmund's opinions. If the ALJ finds appropriate reasons for not giving the opinions controlling weight, the ALJ may not reject the opinions without providing specific and legitimate reasons supported by substantial evidence in the record.

**B. The ALJ Failed To Properly Assess Plaintiff's Type 1 Diabetes, Fatigue, Neuropathy, Osteoarthritis And Kidney Disease As Severe Impairments At Step Two Of The Evaluation**

By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987) (O'Connor, J., concurring); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) ("We have defined the step-two inquiry as a de minimis screening device to dispose of groundless claims."). An impairment is not severe only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. Smolen, 80 F.3d at 1290 (internal citation omitted).

As a threshold matter, Plaintiff's type 1 diabetes is well established by the record. While the ALJ found Plaintiff's type 2 diabetes to be a severe impairment (AR 31), she did not acknowledge that in January 2014, Plaintiff's diabetes had progressed from type 2 to type 1 and that it subsequently remained uncontrolled despite Plaintiff's strict adherence to his treatment regimen. (AR 399, 403, 408, 413, 420, 452). In type 1 diabetes, the immune system attacks and destroys insulin-producing cells in the pancreas, leaving the body with little or no insulin and a build-up of sugar in the bloodstream. See Mayo Clinic, Diabetes.

Moreover, the medical record indicates that Plaintiff's type 1 diabetes has led to multiple long-term complications, including nerve damage (neuropathy), kidney damage (nephropathy) and chronic

fatigue.  See Mayo Clinic, Diabetes (noting that fatigue is a common symptom of diabetes and that long-term complications include neuropathy and kidney disease).  Dr. Bernard consistently found signs of diabetic neuropathy.  (AR 332, 337, 340, 343, 397, 402, 406, 418).  "Diabetic neuropathy is a type of nerve damage that can occur if you have diabetes.  High blood sugar (glucose) can injure nerve fibers throughout your body, but diabetic neuropathy most often damages nerves in your legs and feet."  Mayo Clinic, Diabetic Neuropathy, available at www.mayoclinic.org (last visited Dec. 19, 2017).  In April and June 2015, Dr. Sigmund concluded that Plaintiff has uncontrolled diabetes with kidney complications, including chronic kidney disease.  (AR 434-37, 460-64).  "Diabetic nephropathy is a serious kidney-related complication of type 1 diabetes[, which] . . . affects the ability of your kidneys to do their usual work of removing waste products and extra fluid from your body."  Mayo Clinic, Diabetic Nephropathy, available at www.mayoclinic.org (last visited Dec. 19, 2017).  Further, Plaintiff's physicians consistently found that Plaintiff has chronic fatigue and osteoarthritis of his hands and hips.  (AR 327-28, 332, 343-45, 388-90, 397, 434-37, 457, 460-64).  Thus, the ALJ's discussion of Plaintiff's condition does not fairly represent the significance of his type 1 diabetes and the limitations and complications arising from it, as reflected in the record.

Because a step-two evaluation is to dispose of "groundless claims," and the evidence here established that Plaintiff suffered from type 1 diabetes, neuropathy, kidney disease, chronic fatigue and osteoarthritis, the ALJ erred by not addressing these ailments.

16

See Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The evidence in the record was sufficient for the ALJ to conclude that Plaintiff's type 1 diabetes, neuropathy, kidney disease, chronic fatigue and osteoarthritis were severe impairments at step two under the de minimis test.

Although Defendant argues that this error was harmless (Dkt. No. 19 at 3-4), the Court disagrees. Because "[s]tep two is merely a threshold determination[,] . . . [i]t is not meant to identify the impairments that should be taken into account when determining the RFC." Buck v. Berryhill, 869 F.3d 1040, 1048–49 (9th Cir. 2017). Thus, a step-two error is harmless if the impairment was, in fact, considered in assessing the claimant's RFC. Id. at 1049 ("The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not.") (emphasis in original). Accordingly, where as in Buck, "all impairments were taken into account" in assessing the claimant's RFC, no remand is required. Id. Here, however, the ALJ did not account in the RFC for the limitations documented by Plaintiff's type 1 diabetes, neuropathy, kidney disease, chronic fatigue and osteoarthritis, including associated complications such as chronic fatigue, nerve damage and upper extremity limitations, as discussed above. By failing to recognize Plaintiff's type 1 diabetes neuropathy, kidney disease, chronic fatigue and osteoarthritis as severe, and also failing to take into account the limitations caused by Plaintiff's various illnesses, the ALJ did not provide adequate consideration to all of Plaintiff's limitations during the five-step evaluation process.

For the foregoing reasons, the matter is remanded for further proceedings. On remand, the ALJ must evaluate Plaintiff's type 1 diabetes, neuropathy, kidney disease, chronic fatigue and osteoarthritis as severe impairments at step-two and include limitations imposed by Plaintiff's type 1 diabetes, neuropathy, kidney disease, chronic fatigue and osteoarthritis in the ALJ's overall evaluation of Plaintiff. The ALJ must consider the impact of Plaintiff's type 1 diabetes, neuropathy, kidney disease, chronic fatigue and osteoarthritis on his RFC.[3]

**VI.**

**CONCLUSION**

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 22, 2018

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[3] Plaintiff also argues that the ALJ erred by failing to properly consider listing 9.00, his credibility, and the VE's testimony. (Dkt. No. 14 at 11-19, 21-24). However, it is unnecessary to reach Plaintiff's arguments on these grounds, as the matter is remanded for the alternative reasons discussed at length in this Order.

18

THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.